**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **NORTHEASTERN UNIVERSITY and JARG CORPORATION** | |
| **Plaintiffs,** | Civil Action No. 2:07-CV-486-CE |
| **v.** | |
| **GOOGLE INC.** | |
| **Defendant.** | |

## GOOGLE INC.'S MOTION TO COMPEL 30(b)(6) DEPOSITION TESTIMONY FROM JARG CORPORATION AND NORTHEASTERN UNIVERSITY

GOOGLE INC.'S MOTION TO COMPEL 30(b)(6)
DEPOSITION TESTIMONY FROM JARG CORPORATION
AND NORTHEASTERN UNIVERSITY

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF FACTS ...............................................................................2

    A.  Google's 30(b)(6) Deposition Notices to Plaintiffs ...............................2

    B.  Plaintiffs' Failure to Designate Knowledgeable Witnesses In
        Response to Google's 30(b)(6) Deposition Notices .............................2

    C.  Plaintiffs' Refusal to Provide Substantive Testimony In
        Response to Google's 30(b)(6) Deposition Notices .............................4

II.  ARGUMENT .........................................................................................8

    A.  This District Recognizes the Propriety of 30(b)(6) Deposition
        Testimony Pertaining to Infringement Contentions..............................8

        1.  The 30(b)(6) Testimony Offered By Plaintiffs'
            Representatives Constitutes an Attempt to Obstruct
            Proper Discovery .......................................................................8

        2.  The Witnesses Offered By Plaintiffs for Deposition
            Were Not "Persons Most Knowledgeable" Within the
            Meaning of Rule 30(b)(6) ........................................................12

        3.  New 30(b)(6) Witnesses and Sanctions Are Appropriate
            Because Plaintiffs' Privilege Objections Were Not
            Substantially Justified ..............................................................15

III.  CONCLUSION..........................................................................................15

# TABLE OF AUTHORITIES

Page(s)

 **Cases**

*Computer Acceleration Corp. v. Microsoft Corp.*,
  503 F.Supp.2d 819 (E.D. Tex. 2007)................................................................. 12, 14

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
  2008 WL 3916093, at *2 (N.D. Cal. 2008) ................................................. 12

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
  No. 2:06-CV-00272, slip. op. (E.D. Tex. Jan. 8, 2008)................................. 15

*McKesson Info. Solutions LLC v. Epic Sys. Corp.*,
  242 F.R.D. 689, 692-93 (N.D. Ga. 2007) ................................................. 9, 10

*Medtronic Sofamor Danek, Inc. v. Michelson*,
  2003 WL 23200025, at *2 (W.D. Tenn. Dec. 18, 2003) ............................... 9

*MyMail, Ltd. v. America Online, Inc.*,
  No. 6:04-CV-189, slip. op. (E.D. Tex. September 28, 2004) ....................... 8, 15

*Sicurelli v. Jeneric/Pentron, Inc.*,
  2005 WL 3591701, at *5-6 (E.D.N.Y. Decl. 30, 2005)................................. 9

In response to media inquiries shortly after this suit was filed, Michael Belanger, CEO and co-founder of Jarg Corporation, had little difficulty explaining his understanding of plaintiffs' infringement theories to reporters from the Boston Globe and Reuters. (Ex. A (11/10/07 Boston.com) ("'This particular patent has to do with the fundamental database architecture, which [Google] uses to serve up every single result they serve to you,' said Michael Belanger;" and "[Michael Belanger] did some further research and became convinced Google was using the patented technology.") and Ex. B (11/11/07 Reuters).)

However, when it came time to explain the basis for this lawsuit in deposition, plaintiffs' claimed that the facts and circumstances supporting their infringement allegations were privileged and refused to even confirm what Jarg's CEO had told the media. In particular, when asked to provide the factual bases for its complaint and P. R. 3-1 infringement disclosures, plaintiffs designated two unprepared witnesses – one a lawyer – who were unable to explain basic information about their patent, their infringement theories, or their understanding of the alleged infringing product from the very documents cited in plaintiffs' disclosures. Tellingly, the witnesses offered by plaintiffs had not even reviewed in any detail the documents cited in the disclosures. Instead of describing the facts and circumstances supporting their infringement contentions, plaintiffs' witnesses simply read from the P. R. disclosures themselves and refused to answer further based on wholly improper privilege and work product instructions. Plaintiffs have hindered the full and fair development of the relevant evidence in this case, and Google now seeks the Court's assistance to compel this discovery. In particular, Google seeks an order compelling Plaintiffs to provide competent 30(b)(6) witnesses on the three topics previously noticed and for Google's costs and fees for the earlier depositions.

## I.     STATEMENT OF FACTS

### A.     Google's 30(b)(6) Deposition Notices to Plaintiffs

Plaintiffs filed this action on November 6, 2007, alleging patent infringement.  On September 9, 2008, plaintiffs served their P. R. 3.1 disclosures.  (Ex. J.)  Google served each plaintiff with a brief 30(b)(6) notice of deposition, asking each plaintiff to designate a person most knowledgeable to testify in response to three discrete topics: 1) the basis and foundation for the allegations of patent infringement in the complaint; 2) the basis and foundation for the P. R. 3-1 Infringement Contentions, and related documents forming any such basis; and 3) any Google technology tested by plaintiffs for purposes of the current litigation.  (Ex. C, D.)  On September 16, 2008, plaintiffs served Google with their objections to those deposition notices.  (Exs. E, F.)  Thereafter, the parties identified mutually agreeable dates for the noticed depositions to proceed.

### B.     Plaintiffs' Failure to Designate Knowledgeable Witnesses In Response to Google's 30(b)(6) Deposition Notices

The Court will recall that there are two plaintiffs in this case; each was served with a separate 30(b)(6) notice.  On September 23, plaintiff Northeastern offered Anthony Pirri, director of the division of technology transfer at Northeastern for deposition in response to Google's 30(b)(6) notice.  The deposition was suspended after less than two hours once Mr. Pirri made clear that he would refuse to answer any substantive questions based upon privilege or work product claims that were, and are, spurious at best.

During his deposition, Mr. Pirri admitted that he did not understand basic elements of the patent-in-suit, and testified that he could not comment on Northeastern's behalf.  (Pirri Tr. at 45:10-18; 51:12-24; 65:15-66:4 (Ex. L).)  He also indicated that he had not reviewed—or even seen—the references cited in Northeastern's Infringement Contentions.  (Pirri Tr. at 13:13-14:4; 19:8-20:4; 32:23-33:3; 34:12-25; 35:16-18.)  In fact, Mr. Pirri could not even answer many of the

most basic questions underlying the suit, such as those relating to Northeastern's awareness of the accused product. (Pirri Tr. at 20:24-21:6; 25:6-14.) In short, Mr. Pirri could do nothing to explain the facts and circumstances supporting plaintiffs' disclosures.

On September 25, plaintiff Jarg presented James Belanger ("Mr. Belanger" – not to be confused with his cousin and Jarg CEO Michael Belanger, who spoke with the media about the case), an outside lawyer for Jarg, as its 30(b)(6) corporate representative. Mr. Belanger is not a Jarg employee, had virtually no personal knowledge of the facts, and is not even identified in Plaintiffs' initial disclosures as a person having discoverable information in this suit (Ex. G). Perhaps by design, Jarg objected to most substantive questions on privilege and work product grounds based on his status as Jarg's outside counsel. This deposition lasted about half a day.

Mr. Belanger admitted to only having "limited" familiarity with the complaint, and had only "scanned" it in preparation for his deposition. (Belanger Tr. at 24:11-25:18 (Ex. M).) Mr. Belanger had not reviewed the references and materials that Jarg relied upon in its Rule 3.1 infringement disclosures. (Belanger Tr. at 127:13-128:3; 128:16-129:20; 132:18-134:13.) He expressed no confidence to testifying about the patent at issue, other than simply reading back what was stated in Plaintiffs' infringement contentions. (Belanger Tr. at 72:4-12.) He could not answer questions such as whether Jarg employed more or less than five people. (Belanger Tr. at 17:2-22.) He did not know whether Jarg read the patent or file history, did any claim construction analysis, or even compared the claims of the patent to the accused product, as part of the process of assessing whether to file the complaint. (Belanger Tr. at 64:7-65:24; 66:17-19; 69:25-70:11.) Mr. Belanger did not know if Jarg had looked for documents describing the current version of Google's accused product. (Belanger Tr. at 96:13-19.) Despite his limited knowledge, Mr. Belanger did know enough to repeatedly identify two people who would have

the information: Michael Belanger (Jarg) and Ken Baclawski (Northeastern). (Belanger Tr. at 68:12-18; 69:25-70:11; 96:13-19; 124:11-126:15; 133:11-134:13.) Mr. Belanger could only make assumptions about, and did not know the name of, Jarg's product that practiced the asserted claims of the patent-in-suit, which was somehow identified in Jarg's Infringement Contentions pursuant to P. R. 3-1(f). (Belanger Tr. at 124:11-126:15.) Again, Mr. Belanger identified Mr. Baclawski as someone who would have this information. (Belanger Tr. at 124:21-125:12.) Like the prior deposition of Northeastern, the deposition of Jarg did nothing to shed light on the facts and circumstances supporting plaintiffs' allegations in this case.

### C. Plaintiffs' Refusal to Provide Substantive Testimony In Response to Google's 30(b)(6) Deposition Notices

In addition to presenting witnesses wholly unprepared to address the issues identified in Google's 30(b)(6) deposition notices, plaintiffs also apparently instructed those witnesses not to divulge any substantive information pertaining to plaintiffs' initial infringement contentions or their basis for filing the suit.

The two deposition transcripts are riddled with examples of speaking objections and instructions not to answer. Northeastern's 30(b)(6) witness was instructed not to answer nine questions in less than two hours, and refused to answer eight of them. (Pirri Tr.) Jarg's 30(b)(6) witness was expressly instructed not to answer at least 95 questions during his half-day deposition, and refused to answer even more; a total of 109 questions. (Belanger Tr.) Both witnesses confirmed that they would refuse to answer any further questions on Northeastern's or Jarg's understanding of the patent and their infringement contentions. (Pirri Tr. at 48:25-50:16; Belanger Tr. at 182:8-185:5.) Below are samples of these refusal to answer questions.

For example, Mr. Pirri was instructed not to answer questions about the factual basis for filing the complaint.

Q.  Okay.  So without having done any tests,  what was the basis of filing the complaint?

A.  I think it's spelled out in the document as prepared by our attorneys, who have had the expertise to file a document, which you have not given me yet, the infringement contentions document.

Q.  All right.  But I'm asking about the complaint because that document existed after the complaint was filed.

MR. STOUT:  Object to the extent your question calls for privileged communications between Northeastern and its counsel.

MR. WOLFF:  I'm asking about the factual basis.

BY MR. WOLFF:

Q.  What was the basis for the complaint before it was filed?

MR. STOUT:  Renew my objection.

A.  On the advice of counsel, I will not respond to the question.

Q.  All right.  So you're not going to answer the question because your counsel has objected on the grounds of privilege?

A.  Yes.  (Pirri Tr. at 18:3-19:2.)

Mr. Pirri was further instructed not to answer anything that was not in Northeastern's

Infringement Contentions.

Q.  All right.  And beyond the contentions themselves, are you able to provide to me any factual basis other than Exhibit 4 for Northeastern's contention that Google infringes the '593 patent?

MR. STOUT:  Objection.  Form.  Also object on a privilege basis to the extent your question is calling for anything not disclosed in those initial disclosures.

A.  I will adhere to my advice of counsel.

BY MR. WOLFF:

Q.  And there's no part of my question that you're able to answer, given your attorney's instruction?

A.  No.  (Pirri Tr. at 61:1-15.)

Mr. Pirri restricted his answers to reading from the Infringement Contentions, and

adhered to counsel's instructions not to answer anything beyond what was expressly stated in the

contentions.  (*See, e.g.*, Pirri Tr. at 45:19-50:16) (Mr. Pirri answering, "I can read you the

document here that indicates the basis upon the contention, first infringement contention.  Would

you like me to read it?  I can read it word for word.")  He indicated that his answer would be the

same for other questions about the claim elements in the chart of the infringement contentions.

Q. Are you able to tell me how this claim applies to Google?

MR. STOUT: Objection. Form.

A. Only as presented in this document.

Q. Now, would it be beneficial or not for me to continue to go through every claim in the same manner I went through the first claim set?

MR. STOUT: Objection. Form.

A. No.

Q. I would get the same answers for questions as to every one of the claims in the contentions; is that correct?

MR. STOUT: Objection. Form.

A. Yes.

Q. So Northeastern is not able to at this time tell me what any of the clauses mean to it?

MR. STOUT: Objection. Form.

A. Only as presented in this document, as prepared by Vinson & Elkins. (Pirri Tr. at 56:3-21; *see also* Pirri Tr. at 49:3-50:5.)

Jarg's witness responded similarly, and refused to answer questions based upon assertions of privilege. For example, when asked about Jarg's understanding of language in the patent used to make its infringement allegations, Mr. Belanger asserted he could not answer without revealing attorney-client communications.

Q. All right. So the first paragraph I'd like to talk about [referring to the patent] is at column 1, approximately lines 32 through 41. It begins, "It should also be noted." And what I'd like to know is Jarg's understanding of the limitation of the prior art identified in this paragraph?

MR. VALEK: I'm going to object to the form of this question. I'll also object to the extent it requires you to disclose discussions that Jarg has had with its litigation counsel. Instruct you not to answer that as privileged.

A. And your question again is? I'm sorry.

Q. It's basically what is the point of that paragraph at column 1, lines 32 through 41?

MR. VALEK: Same objection. And again, I'll object on privilege to the extent it requires you to disclose conversations between Jarg and its litigation counsel.

THE WITNESS: What's the question? I'm sorry. I'm sorry, ask the question again.

COURT REPORTER: "Question: 'It's basically what is the point of that paragraph at column 1, lines 32 through 41?'"

MR. VALEK: Same objection.

A. All right. I'm -- I can read this and tell you what I think the point of it is.

Q. That's what I'd like to know.

A. Okay.

MR. VALEK: And again, to the extent this requires you to reveal communications that Jarg has had with its litigation counsel, I'll advise you not to answer. If you can answer it without doing that, go ahead.

A. I don't think I can answer this without revealing attorney/client communications.

Q. You don't think you can or you can't?

A. I can't answer that without revealing attorney/client communications. I mean, personally I can tell you what -- never mind. I can't answer it without --

(Belanger Tr. at 76:6-77:21.)

In response to an assertion of work product, Mr. Belanger also refused to explain Jarg's understanding of terms used by Jarg in its own infringement contentions.

Q. Okay. Let's turn to Exhibit 4. And why don't you tell me what Jarg -- this is on page 2 of Exhibit 4. And why don't you tell me what Jarg's understanding of fuzzy queries as used in these contentions means?

MR. VALEK: I'm going to object and instruct the witness not to answer questions regarding Jarg's contention on claim construction because it's attorney work product.

A. And I will comply with those instructions.

Q. So you can't tell me what fuzzy queries mean in Exhibit 4?

A. Based on privilege. (Belanger Tr. at 134:14-135:2.)

Mr. Belanger also declined to answer questions about how the asserted claims apply to Google's accused products, and repeatedly asserted that he could not answer such questions beyond stating what was disclosed in the infringement contentions.

Q. And why is it that Google's document servers literally meet the limitation of a plurality of query nodes?

MR. VALEK: Again, I'll object on the basis of privilege to the extent the question asks him to go beyond what's disclosed in the contentions.

A. And I can't go beyond what's disclosed in the contentions.

Q. Let's go back to the previous page. At the bottom of the page it says, "The Google Web Server and Index Servers literally meet the limitation of a plurality of home nodes." So why is it that the Google Web Servers and Index Servers literally meet this limitation?

MR. VALEK: Again, I'll object. Privilege to the extent this calls for information beyond the reasons given in the infringement contention document.

A. And I think we've -- I described before the contentions and therefore, I'm not going to go beyond those based on privilege. (Belanger Tr. at 140:22-141:18.)

## II.    ARGUMENT

### A.    This District Recognizes the Propriety of 30(b)(6) Deposition Testimony Pertaining to Infringement Contentions

This District has recognized that 30(b)(6) depositions pertaining to infringement contentions are proper.  In an unpublished opinion by Judge Davis, *MyMail, Ltd. v. America Online, Inc.*, No. 6:04-CV-189, slip. op. (E.D. Tex. September 28, 2004), the Court compelled a patentee to produce a 30(b)(6) witness to answer questions about "[t]he basis and foundation for [plaintiff's] contention that [defendant] infringes any claim of the '290 patent."  (Ex. H, at 3; Ex. I (docket order).)  In that case, the plaintiff sought a protective order to delay the deposition on claims discovery and infringement contentions claiming that this discovery was premature, but that protective order was denied and the discovery compelled.  (Ex. H, at 1.)  Here, plaintiffs Jarg and Northeastern did not seek a protective order.  Instead, they prepared their witnesses to only read from the infringement contentions and interjected spurious privilege objections whenever Google sought information not expressly recited in those contentions.  Plaintiffs' actions rendered the depositions a pointless waste of considerable time and resources, and were improper for at least the reasons listed below.

### 1.    The 30(b)(6) Testimony Offered By Plaintiffs' Representatives Constitutes an Attempt to Obstruct Proper Discovery

Both Plaintiffs offered unprepared witnesses in an attempt to obstruct Google from obtaining discoverable information.  The witnesses knew little if anything about the patent-in-suit, the facts and circumstances surrounding the complaint, the infringement contentions, or the accused product.  Indeed, it appears that the witnesses were purposefully presented for deposition based on their total lack of knowledge of the patent or the documents upon which plaintiffs' infringement contentions were based (Belanger Tr. at 22:3-5; 127:13-17), aside from their willingness to simply read from the contentions themselves.  Throughout the depositions, in

response to questions seeking factual information not explicitly stated in the Plaintiffs' infringement contentions, Plaintiffs' counsel improperly instructed the witnesses not to answer.

Facts underlying plaintiffs' infringement contentions are not themselves protected by the attorney-client privilege or work product doctrine. *See, e.g., Sicurelli v. Jeneric/Pentron, Inc.*, 2005 WL 3591701, at *5-6 (E.D.N.Y. Decl. 30, 2005); *Medtronic Sofamor Danek, Inc. v. Michelson*, 2003 WL 23200025, at *2 (W.D. Tenn. Dec. 18, 2003). Likewise, plaintiffs' understanding of its own patent and interpretation of its claims are not shielded from discovery by the attorney-client privilege or work product doctrine. *See, e.g., Sicurelli*, 2005 WL 3591701, at *6. And since plaintiffs themselves chose to bring this infringement suit, plaintiffs have no legal grounds to argue that, before claim construction, they cannot determine what is covered by their own patent. *See, e.g., McKesson Info. Solutions LLC v. Epic Sys. Corp.*, 242 F.R.D. 689, 692-93 (N.D. Ga. 2007).

Plaintiffs' counsel, however, continually instructed both witnesses numerous times not to answer—and the witnesses refused to answer—questions seeking facts, including the factual basis for Plaintiffs' infringement contentions and filing of the complaint, Plaintiffs' understanding of claim terms, and even the identification of any specific Google products accused of infringement. For example, Jarg's 30(b)(6) witness was instructed not to answer at least 95 questions during his half-day deposition, and refused to answer a total of 109 questions. (Belanger Tr.) Meanwhile, Northeastern's 30(b)(6) witness was instructed not to answer nine questions in less than two hours, and refused to answer eight of them. (Pirri Tr.) Both witnesses confirmed that they would refuse to answer any further questions on their understanding of the patent and the facts and circumstances supporting the infringement contentions in this case. (Pirri Tr. at 48:25-50:16; Belanger Tr. at 182:8-185:5.)

The vast majority (if not all) of these objections were baseless and improper.  For example, when asked about a public document cited in Jarg's infringement contentions, which Mr. Belanger had not even seen until after his own attorney introduced the document in his redirect of Google's examination, Jarg's counsel objected based on privilege grounds:

> Q.  All right.  So, have you read Exhibit 12 before today?
> A.  No.
> Q.  Have you seen Exhibit 12 before today?
> A.  No.
> . . .
> Q.  All right.  And can you tell me what it is that is doing the hashing that you've referred to in section 4.4 [of Exhibit 12]?
>         MR. VALEK:  Objection, privilege and work product to the extent it goes beyond what's cited in the infringement contention document, Exhibit 4.
>         MR. WOLFF:  How can that possibly be privileged?  The witness said he didn't see this document before his deposition today.
>         MR. VALEK:  It calls for attorney/client communications -- or attorney work product.
>         MR. WOLFF:  How would he know attorney work product if you never communicated it to him?
>         MR. VALEK:  He's testifying on behalf of Jarg.  (Belanger Tr. at 208:18-210:3.)

Jarg's counsel made it clear that it would keep instructing the witness not to answer questions about Jarg's understanding of how the patent applied to Google.  (Belanger Tr. at 183:8-13, counsel for Jarg stating, "I'll tell you that to the extent you're asking about Jarg's understanding of the meaning of those claim terms, I will object and instruct him not to answer based upon privilege.")  Google sought this information to properly prepare fully responsive P. R. 3-3 and 3-4 disclosures and materials.  As required by Rule 11, Plaintiffs must have had some understanding of the claims at the time they filed suit.  *McKesson*, 242 F.R.D. at 694 ("Pursuant to Rule 11, McKesson was required to have a reasonable belief, prior to filing suit, that Epic infringed at least one claim of the" patent-in-suit.)  Yet, when the witness responded, he limited his answers to the confines of the language in the infringement contentions.

COURT REPORTER: "Question: 'Can you tell me how this limitation is satisfied by the cited excerpts from the Google documents?'"

A. Beyond stating what's in the second infringement contention and the column for second infringement contention, I can't go because of privilege. So that the language in the second infringement contention is the manner which we believe demonstrates the infringement.

. . .

MR. VALEK: To the extent you're asking him to go beyond the infringement contentions document, yes, I will instruct him not to answer based on privilege and work product. (Belanger Tr. at 204:13-205:18.)

Northeastern's witness was equally evasive, limiting his answers to the text of the infringement contentions, and refusing to say more based on counsel's instructions.

Q. So other than reading the document, are you able to answer the question?

MR. STOUT: Objection. Form. And I'm also going to object to privilege to the extent you're asking about anything that's not disclosed in those infringement contentions.

A. I'll not answer the question based upon the advice of counsel. (Pirri Tr. at 48:17-24.)

Even on questions about facts—not communications—Northeastern's counsel instructed the witness not to answer.

Q. Okay. So without having done any tests, what was the basis of filing the complaint?

A. I think it's spelled out in the document as prepared by our attorneys, who have had the expertise to file a document, which you have not given me yet, the infringement contentions document.

Q. All right. But I'm asking about the complaint because that document existed after the complaint was filed.

MR. STOUT: Object to the extent your question calls for privileged communications between Northeastern and its counsel.

MR. WOLFF: I'm asking about the factual basis.

BY MR. WOLFF:

Q. What was the basis for the complaint before it was filed?

MR. STOUT: Renew my objection.

A. On the advice of counsel, I will not respond to the question. (Pirri Tr. at 18:3-23.)

In contravention of the purpose of P. R. 3-1(b), Northeastern's counsel instructed the witness not to identify what Google products are implicated by Northeastern's P. R. 3-1(b) disclosure of products it is accusing of infringement. (*See* Pirri Tr. at 26:9-17; *Computer*

*Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 822 (E.D. Tex. 2007) ("The local

patent rules 'exist to further the goal of full, timely discovery and provide all parties with

adequate notice and information with which to litigate their cases, not to create supposed

loopholes through which parties may practice litigation by ambush.'") (citations omitted.))

Plaintiffs' improper objections and instructions not to answer effectively destroyed

Google's ability to discover pertinent, non-privileged information during the depositions. It also

frustrates a party's ability to prepare fully responsive P. R. 3-3 and 3-4 disclosures and materials

when it is clear that the patentee's infringement theory and understanding of its own patent are

improperly concealed from discovery, as many of the deponents' responses clearly illustrate:

> Q. All right. Are you aware of any other Google Web Search that is implicated
> by your 3-1(b) disclosure?
> MR. STOUT: Objection. Form. Objection, privilege also. To the extent
> that that question calls for things that are not disclosed in the infringement
> contentions, instruct the witness not to answer.
> A. I will not answer. (Pirri Tr. at 26:9-17.)

Plaintiffs should be compelled to present for deposition witnesses who are fully prepared

to answer the questions asked of the deponents, and to fully answer follow-up questions on the

same topics (which were not asked because it would have been an even greater waste of time and

resources), before any further discovery takes place.

> **2.     The Witnesses Offered By Plaintiffs for Deposition Were Not
> "Persons Most Knowledgeable" Within the Meaning of Rule 30(b)(6)**

Both Plaintiffs Jarg and Northeastern presented witnesses who were not "persons most

knowledgeable" within the meaning of Rule 30(b)(6). *Dong Ah Tire & Rubber Co., Ltd. v.

Glasforms, Inc.*, 2008 WL 3916093, at *2 (N.D. Cal. 2008) ("Companies have a duty to make a

conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6)

depositions and to prepare them to fully and unevasively answer questions about the designated

subject matter.")  The witnesses were to be prepared to testify about the factual basis supporting the allegations in the complaint, the factual basis for the infringement contentions, and their understanding of the accused product.  (Exs. C, D.)  Instead, the designated witnesses had little to no knowledge about these topics, and appeared only prepared to read from Plaintiffs' Infringement Contentions.

Jarg's evasive maneuvering is apparent from its choice to present its outside counsel as a witness, rather than selecting one of the handful of non-lawyer employees working for the company.  Jarg's witness was prepared to read from the infringement contentions, but when allowed to answer questions outside of the contentions, was not prepared to do so and he was also completely unprepared to deal with the facial inconsistencies within the contentions themselves.[1]  For example, Jarg's witness did not know whether Jarg had looked for documents describing the current version of Google's accused product.  (Belanger Tr. at 96:13-19.)  When asked about Jarg's own product that allegedly practiced the asserted claims of the patent-in-suit, as identified in Jarg's Infringement Contentions pursuant to P. R. 3-1(f), the witness could only make assumptions about, and did not even know the name of, Jarg's product.  (Belanger Tr. at 124:11-126:15.)  He had not reviewed the references and materials that Jarg relied upon in its contentions (Belanger Tr. at 127:13-128:3; 128:16-129:20; 132:18-134:13); had "limited" familiarity with the complaint (Belanger Tr. at 24:11-25:18); expressed no confidence in testifying about the patent at issue (Belanger Tr. at 72:4-12); and basically appeared ready only to read the infringement contentions into the record (Belanger Tr. at 24:11-25:18).  Though when

---

[1] For instance, the patent claims plainly require that a so-called "home node" hashes a "query fragment."  For this hashing limitation, plaintiffs cite to a hash by what is alleged to be a "query node" and not a "home node."  [Ex. J, at 3-4.]  Mr. Belanger, for instance, would not even attempt to explain this discrepancy; instead refusing to answer on the basis of alleged privilege and work product grounds.  (Belanger Tr. at 155:15-162:5, particularly beginning at 159:21; *see also* Pirri Tr. at 36:7-14.)

confronted about his lack knowledge, Jarg's witness repeatedly referred to one Jarg employee, Michael Belanger, and one Northeastern employee, Ken Baclawski, as persons more knowledgeable about the noticed topics. (Belanger Tr. at 68:12-18; 69:25-70:11; 96:13-19; 124:21-125:12; 133:11-134:13.) The witness's infinitesimal knowledge of Jarg was such that he did not even know whether Jarg employed less than five people. (Belanger Tr. at 17:2-22.)

Northeastern also presented an equally unprepared witness. The witness had not reviewed—or even seen—the references cited in Northeastern's Infringement Contentions. (Pirri Tr. at 13:13-14:4; 19:8-20:4; 32:23-33:3; 34:12-25; 35:16-18.) He admitted not being able to understand basic elements of the patent-in-suit, and could not comment on Northeastern's behalf. (Pirri Tr. at 45:10-18; 51:12-24; 65:15-66:4.) Northeastern's witness was unable to identify whether Northeastern had a product that practiced the asserted claims (Pirri Tr. at 29:3-23), did not know how long Northeastern was aware of the accused Google product, and did not know whether Northeastern was accusing multiple Google products of infringement. (Pirri Tr. at 20:24-21:6; 25:6-14.) In short, he was completely unable to explain anything of substance about the patent or plaintiffs' infringement contentions. (*See, e.g.*, Pirri Tr. at 56:7-58:1; 61:1-15.)

This is not a case where there are no persons knowledgeable about the noticed topics—as testified by Jarg's 30(b)(6) witness, Michael Belanger (Jarg employee) and Ken Baclawski (Northeastern employee) are knowledgeable. (*See* Belanger Tr. at 68:12-18; 69:25-70:11; 96:13-19; 124:21-125:12; 133:11-134:13.) In this case, the Plaintiffs deliberately presented unprepared witnesses and improperly used allegations of privilege to hinder discovery aimed at whether plaintiffs had a reasonable basis for filing this lawsuit. The infringement "contentions are a way to streamline the discovery process." *Microsoft*, 503 F.Supp.2d at 823. However, plaintiffs' actions only prolong the process and help them cast an unreasonably wide net in their own

discovery, which will in turn place an undue burden on Google.  Plaintiffs' attempts to thwart

that discovery should not be tolerated.

### 3.  New 30(b)(6) Witnesses and Sanctions Are Appropriate Because Plaintiffs' Privilege Objections Were Not Substantially Justified

Google seeks relief similar to what Courts in this District have already granted.  Where

objections of this type have been deemed improper, the Courts have ordered a party to produce

knowledgeable 30(b)(6) witnesses on previously noticed topics.  (*See MyMail, supra* (Ex. H), at

3 n.3 (unpublished opinion, granting leave to depose witness a second time on same topics);

*Mass Engineered Design, Inc. v. Ergotron, Inc.*, No. 2:06-CV-00272, slip. op. (E.D. Tex. Jan. 8,

2008) (Ex. K) at 3 (unpublished opinion, ordering deposed party to produce within two weeks "a

30(b)(6) designee knowledgeable of the noticed topics.")  And where instructions not to answer

questions were found "antithetical to the Court's policy on open discovery," this Court awarded

sanctions covering fees and expenses for both the previous deposition and the motion to compel.

(*Id.* at 3 (unpublished opinion); see also Fed. R. Civ. P. 37(5)(A).)  Because Plaintiffs' privilege

objections were unreasonable, rendered the depositions pointless, and wasted considerable time

and resources, sanctions and new depositions are entirely warranted.

## III.  CONCLUSION

For at least the foregoing reasons, Google respectfully requests that an order compelling

Plaintiffs Jarg and Northeastern to provide competent 30(b)(6) witnesses on the three topics

previously noticed and for its costs and fees for the earlier depositions.

Dated: November 26, 2008                    Respectfully submitted,

                                            FISH & RICHARDSON P.C.


                                            By: /s/ Jason W. Wolff
                                                 Michael E. Jones (SBN 10929400)
                                                 mikejones@potterminton.com
                                                 POTTER MINTON
                                                 A Professional Corporation
                                                 110 N. College, Suite 500
                                                 Tyler, TX 75702
                                                 Telephone: (903) 597-8311
                                                 Facsimile: (903) 593-0846

                                                 Ruffin B. Cordell (SBN 04820550)
                                                 cordell@fr.com
                                                 FISH & RICHARDSON P.C.
                                                 1425 K Street, N.W., 11th Floor
                                                 Washington, DC 20005-3500
                                                 Telephone: (202) 783-5070
                                                 Facsimile: (202) 783-2331

                                                 Jason W. Wolff (CA SBN 215819)
                                                 wolf@fr.com
                                                 FISH & RICHARDSON P.C.
                                                 12390 El Camino Real
                                                 San Diego, CA 92130
                                                 Telephone: (858) 678-5070
                                                 Facsimile: (858) 678-5099

                                                 Howard G. Pollack (*Admitted Pro Hac Vice*)
                                                 pollack@fr.com
                                                 Shelley K. Mack (*Admitted Pro Hac Vice*)
                                                 mack@fr.com
                                                 Jerry T. Yen (CA SBN 247988)
                                                 yen@fr.com
                                                 FISH & RICHARDSON P.C.
                                                 500 Arguello Street, Suite 500
                                                 Redwood City, CA 94063
                                                 Telephone: (650) 839-5070
                                                 Facsimile: (650) 839-5071

                                            Attorneys for Defendant
                                            GOOGLE INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 26, 2008, a true and correct copy of GOOGLE INC.'S MOTION TO COMPEL 30(b)(6) DEPOSITION TESTIMONY FROM JARG CORPORATION AND NORTHEASTERN UNIVERSITY was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

                                              /s/ Jason W. Wolff
                                                Jason W. Wolff

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Google has complied with the meet and confer requirement in Local Rule CV-7(h).  The present motion is opposed. Counsel for the parties conducted an in-person conference on November 5, 2008.  The conference included Ruffin Cordell, Jason Wolff, Michael Jones (all three counsel for Google), William Dawson, David Weaver, Otis Carroll (all three counsel for Jarg Corp. and Northeastern University).  No agreement could be reached on whether the Plaintiffs' privilege objections were reasonable, and on Google's request that Plaintiffs present competent 30(b)(6) witnesses on the three topics previously noticed .  The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Ruffin Cordell (by permission)*
GOOGLE INC.'S LEAD TRIAL
COUNSEL

*/s/ Michael Jones (by permission)*
GOOGLE INC.'S LOCAL
COUNSEL

50622296.doc