IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NORTHEASTERN UNIVERSITY and JARG CORPORATION, | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CIVIL ACTION NO. 2:07-CV-486-CE |
| GOOGLE INC., | § § § | |
| *Defendant.* | § | |

**NORTHEASTERN UNIVERSITY AND JARG CORPORATION'S OPPOSITION TO GOOGLE INC.'S MOTION TO COMPEL**

Northeastern University and Jarg Corporation oppose Google Inc.'s motion to compel because (i) their witnesses provided the non-privileged information "known or reasonably available" to them on the three noticed topics and thereby complied with their Rule 30(b)(6) obligations, and (ii) Google's 30(b)(6) deposition notices were a tactical ploy to circumvent the Patent Local Rules' timetable for claim construction proceedings, develop extrinsic evidence to shape that process before it begins, and strip Northeastern and Jarg of their protections under the attorney-client privilege and work product doctrine.[1]

---

[1] Northeastern and Jarg will not overburden the record by attaching the same materials that accompany Google's Motion to Compel 30(b)(6) Deposition Testimony from Jarg Corporation and Northeastern University ("***Google's Motion***"), but rather will cite to the deposition transcripts, pleadings, and other materials that are part of that filing. The materials submitted with this opposition are: (i) a compilation of the claim construction questions Google posed during the disputed depositions (***Exhibit A***); (ii) Google's original 30(b)(6) deposition notices (together as ***Exhibit B***); and (iii) selected pleadings and orders from other cases in this District involving the same or similar issues (***Exhibits C-E***). Since the issue before the Court does not hinge on parsing through the individual form objections asserted in the deposition excerpts, those objections are omitted throughout this opposition unless they are pertinent to a point in the argument.

Austin 1039013v.1

## INTRODUCTION

Northeastern and Jarg filed this patent infringement lawsuit in November 2007. At issue is whether Google's popular search engine infringes a patent Northeastern obtained and later licensed to Jarg, U.S. Pat. No. 5,694,593 (the "*'593 patent*"). Google's three-topic 30(b)(6) notice sought testimony on the infringement allegations in Northeastern and Jarg's complaint and their P.R. 3-1 infringement contentions (their **"Infringement Contentions"**), as well as on any testing the plaintiffs might have done in developing those claims and contentions.

Google has not complained that the Infringement Contentions are not "specific enough to give [Google] notice" of Northeastern and Jarg's infringement claims.[2] Google has not moved to strike the Infringement Contentions as other defendants have done if presented with inadequate disclosures.[3] And Google has not written to ask for clarification of any vague or imprecisely worded contention. Indeed, the timing of Google's deposition notices dispels any suggestion that they were triggered by shortcomings in the Infringement Contentions – *Google served the notices **before** receiving the Infringement* Contentions.[4]

Rather than being driven by any shortcoming in the Infringement Contentions, the 30(b)(6) notices were merely the standard practice of Google's counsel.[5] As another Court in this District had already pointed out to them (in other litigation involving similar notices), given

---

[2] *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 823 (E.D. Tex. 2007).

[3] *Id.* at 823-25 (granting motion to strike inadequate disclosures).

[4] See Defendant Google Inc.'s Notices of Deposition to Plaintiffs (Exhibit B hereto). On September 17, 2008, Google served Northeastern and Jarg with an amended notice of deposition (Documents 47-4 & 47-5).

[5] *See, e.g., Garmin Ltd. v. TomTom, Inc.*, Case No. 2:06-CV-338 (LED), 2007 U.S. Dist. LEXIS 74032, at *22 (E.D. Tex. Oct. 3, 2007) (discovery dispute over another three-topic 30(b)(6) deposition notice) (Exhibit C).

the early stage of the case, this tactic might mean they would not get answers to all their questions.[6] While the topics were fraught with attorney-client privilege and work product[7] issues, Northeastern and Jarg subscribed to the view Google's counsel had espoused (in other litigation involving similar notices) that the "most reasonable solution" was to instruct the "witnesses to not answer questions that implicate[d] privileged information or work product."[8]

Northeastern's and Jarg's faith in this "most sensible solution" was misplaced. As with every other occasion when Google's counsel issued one of these 30(b)(6) deposition notices, controversy ensued. In its moving papers, Google scorns every unanswered question without ever acknowledging the information that was provided; it disdains as "spurious" the privilege objections that were once the "most reasonable solution";[9] and it charges that these objections resulted in more than a hundred questions going entirely unanswered.[10]

In truth, Northeastern and Jarg complied with their obligations on the three noticed topics by testifying to the information that was "known or reasonably available" to them.[11] They were measured and sensible in their attorney client privilege objections, asserting the privilege only to

---

[6] *MyMail, Ltd. v. America Online, Inc.*, Case No. 6:04-CV-189, slip order at 2-3 (E.D. Tex. Sept. 28, 2004) (Davis, J.) ("AOL is represented by competent counsel who understand that seeking depositions too early may result in the witness being unable to answer all questions asked.").

[7] Plaintiffs will refer to these collectively as "privilege" hereinafter.

[8] *See* TomTom's Opposition to Garmin's Motion for Protective Order and Cross-Motions to Compel and for Sanctions at 10, filed in *Garmin Ltd. v. TomTom, Inc.*, Civil Case No. 2-06CV-338-LED, E.D. Tex., Marshall Division (Davis, J.) (hereafter, **"TomTom's Opposition"**) (Exhibit D).

[9] *Compare* Google's Motion at 8 and TomTom's Opposition at 10.

[10] *See* Google's Motion at 4.

[11] FED. R. CIV. P. 30(b)(6).

the limited "extent" Google's questioning implicated it. Only once was either witness instructed not to answer a question,[12] and even then the witness was allowed to answer the off-topic question in his personal capacity.[13] Moreover, the objection was asserted largely in response to Google's questioning on *claim construction*, a subject that was *not* listed in the 30(b)(6) notices and which Northeastern and Jarg have the right to further oppose under P.R. 2-5(a) because this questioning jumped the gun on the claim construction timetable in the Court's docket control order.

For all these reasons, Google's motion should be denied.

**NORTHEASTERN AND JARG COMPLIED WITH
THEIR RULE 30(B)(6) OBLIGATIONS**

**A.    The Depositions, Particularly Jarg's, Were Largely Consumed With Questions Having No Connection to the Three Topics**

Google complains that Northeastern and Jarg's representatives "refused to even confirm what Jarg's CEO had told the press"[14] and Jarg's witness "could not answer such questions as whether Jarg employed more or less than five people."[15] But nothing resembling these topics was included in the 30(b)(6) notices. It is axiomatic that a party's Rule 30(b)(6) obligations attach only to those "matters for examination" that are "describe[d] with reasonable particularity" in the deposition notice.[16] By issuing 30(b)(6) notices on three topics, Google did

---

[12]    *See* Rule 30(b)(6) Videotaped Deposition of Jarg Corporation, James H. Belanger, designee (hereafter **"*Jarg. Dep.*"**) at 60:2-3 (Document 47-14).

[13]    *Id*. at 60:15-20.

[14]    Google's Motion at 1.

[15]    *Id*. at 3.

[16]    FED. R. CIV. P. 30(b)(6).

not impose on Northeastern and Jarg the burden to produce omniscient witnesses at their ready to address any conceivable subject Google fancied to raise.[17]

Whether because Google misunderstands Rule 30(b)(6) or because it intended the notices as a Trojan horse for other discovery, much of its questioning was unrelated to the three topics. For example, as Google's motion alludes, the publicity regarding the litigation figured prominently; Google dwelled on the subject, devoting more than twenty pages of the Jarg deposition to print coverage,[18] repeatedly pressing the witness to speculate about why the media interviewed the company's president[19] and whether the company's president was accurately quoted, even after the witness made clear he had no way of knowing.[20] Undeterred, Google pressed on, slogging through the articles, its examination culminating with the improbable inquiry into the representative's "belief" about whether the company's president "would stand by his statement to the press" *if* the statement were true.[21]

---

[17] *See United States v. District Council of New York City*, No. 90 CIV. 5722, 1992 WL 208284, at *15 (S.D.N.Y. Aug. 18, 1992) ("However liberal the discovery rules are, they could not reasonably be construed as requiring a party in a case such as this to make a Rule 30(b)(6) deponent . . . the repository of all information known to counsel so that she could then provide it to an adversary . . ."); *Reed v. Nellcor Puritan Bennett & Mallinckrodt, Inc.*, 193 F.R.D. 689, 692 (D. Kan. 2000) (quashing a Rule 30(b)(6) notice because the issuing party could not "identify the outer limits of the areas of inquiry noticed").

[18] *See* Jarg Dep. at 33:19-37:4 (4 pages to the Reuters article); 44:15-50:14; 54:2-63:17 (17 pages to the Boston.com article); & 67:8-68:18 (1 page to the Infoweek article).

[19] *Id*. at 52:25-53:4 ("Q. Why do you think Michael would have been the person who discussed the case with the press? A. I don't know. Q. And can you guess?").

[20] *Id*. at 33:19-37:4.

[21] *Id*. at 55:12-56:1 ("Q. The next sentence, "We expect them to be generous enough to pay a normal royalty if Northeastern and Jarg win the case." Do you have any idea whether that is an accurate statement by Michael? A. I have no idea that -- whether the reporter's -- the statement that Michael -- he is attributing to Michael is in fact what Michael said. Q. If it was in fact what Michael said, do you believe Michael would stand by his statement to the press? A. I have no idea.").

In addition to the number of Jarg employees,[22] Google quizzed Northeastern's and Jarg's representatives on a hodgepodge of subjects, including the company's license agreement with Northeastern,[23] the membership of Jarg's Board of Directors and whether they had any affiliation with Northeastern,[24] the company's annual revenues,[25] whether it was Northeastern or Jarg who first identified their trial counsel,[26] their fee arrangement with their counsel,[27] whether Jarg had the resources to press the case on an hourly fee basis,[28] and why Jarg had not made an overture to Google before filing suit.[29]

Both Northeastern's and Jarg's representatives were pressed to explain their request for injunctive relief. Jarg's representative bore most of this questioning, with Google probing whether the company's litigation objective was injunctive relief or a reasonable royalty, and testing his understanding of the comparative impact of an injunction or reasonable royalty on Google's business.[30] The deposition even became mired in whether the remedies of injunction

---

[22] See Jarg Dep. at 17:4 ("Q. How many people work at Jarg?").

[23] *See* Rule 26 and Rule 30(b)(6) Videotaped Deposition of Northeastern University, Anthony Pirri, designee ("***Northeastern Dep.***") at 30:20-32:23 Document 47-13).

[24] *Id*. at 43:1 ("Q. Who's on the board of directors at Jarg? . . . .").

[25] *Id*. at 18:4-5 ("Q. Do you know what Jarg's annual revenues are?").

[26] *Id*. at 35:18-24 ("Q. Is it true that Northeastern signed on after Jarg found counsel?").

[27] *Id*. at 35:15-17 ("Q. And is it true that Vinson & Elkins is taking the case on a contingency fee basis? A. I think that's true as well.").

[28] *Id*. at 35:12-14 ("Q. And is it correct that Jarg lacked the resources to press its case?").

[29] *Id*. at 41:12-14 ("Q. All right. Why is it that Jarg never notified Google of this alleged infringement when it found out about it several years ago?").

[30] See Jarg Dep. at 41:11-44:13 ("Q. So do you think that the Reuters article is correct, that Jarg is only interested in a normal royalty?"); *id*. at 38:21-24 ("Q. But if a court were to find that they were infringing, wouldn't it put them out of business?"); *and id*. at 37:1-4 ("Q. Do you

and reasonable royalty are more properly characterized as "legal" or "equitable" and other nuances of the "legal concept of an injunction."[31]

## B. Northeastern Confirmed that Google's Technology Had Not Been Tested and Google Failed to Ask Jarg Questions About Testing

The most straightforward topic in Google's 30(b)(6) notice was "[a]ny Google technology, product(s) or service(s) tested [by Northeastern or Jarg] for the purposes of the Present Litigation, the circumstances and results of any such tests, and any documents or things related thereto."[32] Northeastern's representative confirmed the institution had not conducted any such test.[33] Whatever the reason, Google did not pose the question to Jarg's representative. Nevertheless, Google asks the Court to compel a "competent" witness to appear and testify on this topic.[34] The request should be denied because (i) Google fails to explain how the confirmation it received from Northeastern is inadequate and (ii) it also does not explain why Jarg should be compelled to appear a second time to answer a question Google did not think to ask the first time around.

## C. Northeastern's and Jarg's Representatives Testified to the "Basis and Foundation" for The Allegation in Their Complaint that Google Infringes.

Google's notice also asked for testimony regarding "[t]he basis and foundation for [Northeastern and Jarg's] contention in . . . the Complaint . . . . that Google infringes any claim

---

know if -- do you know if a normal royalty would put Google out of business? A. I have no idea.").

[31] *Id*. at 37:16-23 & 57:12-19.

[32] *See* Documents 47-4 at 4 & 47-5 at 4.

[33] *See* Northeastern Dep. at 17:24-25-18:1-2 ("Q. All right. So did Northeastern test any Google products prior to filing the complaint? A. Northeastern itself has done no tests on Google products.").

[34] Google's Motion at 1.

of the '593 patent." In response to Google's questions in this regard, both Northeastern and Jarg's representatives explained (i) the background of their learning about the possibility of Google's infringement,[35] (ii) their hiring of counsel to analyze whether Google was infringing,[36] (iii) their filing a complaint based on that analysis,[37] and (iv) they repeatedly pointed to their Infringement Contentions as the *factual basis* for the infringement allegations in the complaint.[38] Google fails to acknowledge this testimony, much less explain why this account of seemingly ordinary progress towards a patent suit falls short.

---

[35] *See* Northeastern Dep. at 61:21-62:16 (". . . . We believed that you were infringing the patent based upon initial conversation with Jarg. And preliminary information that we had based upon public information that was on the Web about the history of Google and a look at the '593 patent led us to believe that, indeed, we should seek more expertise and help to make the decision as to whether to go forth."); Jarg Dep. at 27:7-25-28:1-2 (". . . . I think they became sensitive to the possibility sometime in 2005. Q. And do you know in what context they became sensitive to the possibility? A. I believe it had to do with an article in InfoWeek, which came to the attention of the company. Q. And who at the company did it come to the attention of? A. I think Michael Belanger. Q. And what was it in the article that raised Jarg's suspicion? A. Well, it -- it wasn't a suspicion, I don't believe, at that point. There was a description of the Google process, a general description in InfoWeek. And I believe Michael looked at that and couldn't determine from the article exactly what the process was, and maybe asked Ken to take a look at it and make -- see if he could tell what it was.").

[36] *See* Northeastern Dep. at 61:21-62:16 ("We believed that there was possible infringement, so we sought counsel."); Jarg Dep. at 41:24-42:10 ("There's a lot in that question. . . . [u]ntil we had counsel and the ability to thoroughly examine what we knew and the terms of the patent, we weren't convinced that there was infringement. But after having reviewed the information that is publicly available and having discussed it with counsel, we filed the complaint.").

[37] *Id*.

[38] *See, e.g.,* Northeastern's Dep. at 18:3-9 ("Q. Okay. So without having done any tests, what was the basis of filing the complaint? A. I think *it's spelled out in the document* as prepared by our attorneys, who have had the expertise to file a document, which you have not given me yet, *the infringement contentions document*.") (emphasis added).

Google is less than candid in claiming that Northeastern's representative "was instructed to not answer any questions about the factual basis for filing the complaint."[39] As the excerpt in its motion reflects, when asked for "the basis of complaint," the witness explained that "*it's spelled out in the . . . infringement contentions document*."[40] The same excerpt reflects when Google pressed further the asserted privilege objection was properly confined to the "extent [the] question calls for privileged communications between Northeastern and its counsel."[41] There is nothing inappropriate in that instruction; after all, it is elemental that attorney-client communications do not lose privilege merely because they are raised in a 30(b)(6) deposition.[42]

It is also less than forthright for Google to claim that this instruction had the effect of constraining the witness from going outside the Infringement Contentions.[43] Indeed, when Google baited the witness to take that position ("And there's no part of my question that you're able to answer given your attorney's instruction?"), Northeastern's witness disagreed ("No").[44] And, in the immediately following portion of the transcript, which Google omits from its motion, the witness went on for six pages answering what had and had not been done pre-suit by Northeastern to develop a basis for filing the complaint.[45] That questioning ended only when

---

[39] Google's Motion at 4.

[40] *Id*. at 5 (quoting Northeastern Dep. at 18:3-19:2).

[41] *Id*.

[42] *See* James C. Winton, *Corporate Representative Depositions in Texas—Often Used But Rarely Appreciated*, 55 BAYLOR L. REV. 651, 701 (2003) (Rule "30(b)(6) [is] subject to the rules of privilege.").

[43] Google's Motion at 5.

[44] *Id*. (quoting Northeastern Dep. at 61:1-15).

[45] *See* Northeastern Dep. at 61:16- 67:15.

Google said it had "[n]o further questions at this time," not because the deposition was "suspended" as Google's motion portrays.[46]

In sum, while Google rails about preparedness and privilege, it fails to (i) cite any unanswered aspect of Northeastern and Jarg's basis for filing suit, aside from the plaintiffs' communications with their counsel, or (ii) explain why those communications have lost their privilege. Thus, Google's request for witnesses to appear a second time on this second topic should be denied.

**D. Northeastern and Jarg Testified to the "Basis and Foundation" for Their Infringement Contentions, as Well as the Documents Relating to those Infringement Contentions.**

Finally, Google's notice sought testimony regarding Northeastern and Jarg's "P.R. 3-1 Infringement Contentions, the basis and foundation therefore, and any documents or things related thereto that form the bases of your allegations that each and every element of the asserted claims are infringed by Google."[47] As this Court rightly recognizes, in such circumstances a plaintiff is "typically unable to give highly specified infringement contentions" until it has access to the defendant's documents.[48] That is true here. Google provided its first production of documents pertaining to the architecture of the document indexing and retrieval system used by its search engine only in November, *after* Northeastern and Jarg's Infringement Contentions were due and *after* the disputed 30(b)(6) depositions. Even then, Google designated most of

---

[46] *Compare id.* at 67:16-17 *with* Google's Motion at 2.

[47] *See* Documents 47-4 at 4 & 47-5 at 4.

[48] *American Video Graphics, L.P. v. Electronics Arts, Inc.*, 359 F.Supp.2d 558, 560-61 (E.D. Tex. 2005) (Davis, J.) ("Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself.").

these materials "Confidential Attorneys' Eyes Only," which strictly limits their dissemination,[49] and means they could not be reviewed by Northeastern's and Jarg's representatives. Consequently, the details of Google's search engine software are not information that was "known or reasonably available"[50] to either Northeastern and Jarg, and Rule 30(b)(6) does not require the respondent to manufacture evidence it does not have. To paraphrase this Court's observation in another software case involving similar discovery requests by Google's counsel, Google should have understood that "seeking depositions too early may result in the witness being unable to answer all the questions asked."[51]

Predictably, Northeastern's and Jarg's representatives could not answer every question about Google's software. Indeed, they could not answer every such question if ordered to reappear because Google has designated all the meaningful material about its technology as "Confidential Attorneys' Eyes Only." But Northeastern's and Jarg's representatives did testify to the limited amount they knew about Google's search engine, which necessarily meant they frequently directed Google to the Infringement Contentions,[52] and they acknowledged where

---

[49] *See* Agreed Protective Order (Document 42).

[50] FED. R. CIV. P. 30(b)(6).

[51] *MyMail, Ltd. v. America Online, Inc.*, Case No. 6:04-CV-189, slip order at 2 (E.D. Tex. Sept. 28, 2004) (footnote omitted) (Document 47-9).

[52] *See, e.g.,* Northeastern Dep. at 46:16-24 ("Q. All right. Because one of the things we want to do is understand Northeastern's basis for their infringement contentions and for the allegations -- A. But they're presented in this document -- Q. *That's right*.") (emphasis added)); *id*. at 47:15-23 ("Q. Are you able to tell me why Northeastern believes Google has a plurality of query nodes? A. I can read you the document here that indicates the basis upon the contention, first infringement contention. Would you like me to read it? I can read it word for word. Q. You can answer the question however you'd like."); *id*. at 138:14-139:1; *id*. at 139:20 – 140:4; *id*. at 142:12-21; *id*. at 144:9-23.

they did not know anything further.[53] (Incongruously, Google objected to Northeastern's cross-examination aimed at eliminating any uncertainty about the "basis and foundation" for the plaintiffs' infringement allegations.).[54]

Thus, Google's request for a court order requiring Northeastern and Jarg to reappear to address this third topic should be denied because (i) Google has failed to point to any ambiguity or obscurity in the Infringement Contentions that should have been addressed in these depositions and (ii) Google has failed to point to any instance in which the witnesses could have provided greater detail about how the technology infringes from the available information (that is, other than the "Confidential Attorneys' Eyes Only" material).

E.  **Google's Motion Asks the Court to Compel Claim Construction Discovery, Which Was Not Included in the 30(b)(6) Deposition Notices, Thereby Stripping Northeastern and Jarg of Their Rights Under P.R. 2-5(a)**

The real aim of Google's deposition notices was claim construction discovery. Northeastern's and Jarg's representatives were asked to define or explain the meaning of essentially every claim or limitation in the '593 Patent (these questions are Exhibit A to this opposition). And it is those unanswered questions that are the focal point of Google's motion.

Google's deposition notices did not describe with "reasonable particularity" that claim interpretation would be a topic of the depositions. Its reason for not including the topic is obvious: Doing so would have precipitated a motion for protective order under P.R. 2-5(a).

---

[53]  *See, e.g.,* Northeastern Dep. at 23:14-24:1 ("Q. All right. So which -- are you -- how many versions of the Google Web Search do you think have been offered to the public? A. I don't know."); *id.* at 94:12-25-95:1-10; *id.* at 97:16-22 ("Q. So you don't know if the Google Web Search service has changed since the dates of the articles identified in your contentions? A. Don't know. Q. Who would you ask to find out? A. *Google*.") (emphasis added).

[54]  Northwestern Dep. at 59:1-13 ("Q. And to your knowledge as Northeastern University, as the representative of Northeastern University, do Exhibits 3 and 4 set forth the basis for Northeastern's [infringement] contentions as to each claim element? MR. WOLFF: Object to form. A. Yes.").

Under that rule, discovery "[r]equests seeking to elicit a party's claim construction position" are objectionable when they jump the gun on the claim construction timetable set the Court's docket control order.[55] In this case, claim construction testimony is premature because the parties are not due to exchange their lists of proposed terms and claim elements for construction until May 22, 2009, and the subsequent claim construction discovery does not close until August 14, 2009.[56]

Google does not mention P.R. 2-5(a) in its motion, but it anticipates the issue with a bit of rationalization and a pass at revisionist history. It points out that, "[a]s required by Rule 11, Plaintiffs must have had some understanding of the claims at the time they filed suit."[57] There is no doubting that self-evident point, but it hardly explains (i) Google's omission of claim construction as a topic in the 30(b)(6) deposition, (ii) why the Court should compel testimony on this non-existent topic by stripping Northeastern and Jarg of their right to object under P.R. 2-5(a), or (iii) why Northeastern's and Jarg's communications with their counsel regarding claim construction are any the less privileged.

Google also recasts its questions as an effort to obtain "information to properly prepare fully responsive P.R. 3-3 and 3-4" (invalidity contentions and document production).[58] But Google has served its invalidity contentions, and any possible amendment without leave of the Court hinges on the Court's claim construction order, not any claim construction position by

---

[55] P.R. 2-5(a).

[56] Docket Control Order (Document 33) at 4.

[57] Google's Motion at 10.

[58] *Id*.

Northeastern or Jarg.[59]  Furthermore, the transcripts show Google's objective was claim construction reconnaissance:

● In Northeastern's deposition, Google asked for "any communications [with counsel] regarding *claim construction*."[60]  When the witness sought to clarify whether this meant "claim construction in the preparation of the patent," Google's response made clear it was looking to bypass P.R. 2-5(a): "*No.  And I'm glad you asked that. I'm talking about in regard to this lawsuit.*"[61]  Then, recognizing that privilege that would protect such communications, Google asked for work product: "any *claim construction analysis* that was done by the university pertaining to the infringement contentions[.]"[62]

● In Jarg's deposition, Google probed whether the witness was "not going to answer the questions based on the objection of counsel, objections to form and privilege?"[63]  When asked what particular questions were at issue, Google was clear it meant "*[t]he questions about claims.*"[64]  In particular, it meant its *claim construction questions*:

MR. VALEK [Jarg's counsel]: Like claim construction?

MR. WOLFF [Google's counsel]: *It could be claim construction, yes.*[65]

\* \* \* \*

---

[59] P.R. 3-6(a)(2).

[60] Northeastern Dep. at 41:6-8 (emphasis added).

[61] *Id*. at 14-18 (emphasis added).

[62] *See* Northeastern Dep. at 42:5-11.

[63] Jarg Dep. at 89:22-24.

[64] *Id*. at 90:1-12 (emphasis added).

[65] *Id*. at 90:3-5 (emphasis added).

Northeastern and Jarg are not arguing that their claim construction positions are forever shielded from discovery. They will comply with the Local Patent Rules and the Court's docket control order and make the required disclosures. Until then, they are entitled to invoke P.R. 2-5(a), as is Google. And they are entitled to the protections of the attorney client privilege and work product doctrine. Courts in this District have denied other discovery requests where they were at odds with the timetable in the Local Patent Rules or docket control orders.[66] Google fails to acknowledge P.R. 2-5(a), let alone explain why the Court should strip Northeastern and Jarg of its protections. For that reason, its motion should be denied.

### CONCLUSION AND PRAYER

For the foregoing reasons, Northeastern and Jarg respectfully submit that (i) Google's motion should be denied or (ii) alternatively, any order requiring a second appearance specify what non-privileged "information known or reasonably available" to them on topics described with "reasonable particularity" in the 30(b)(6) notices must be provided by the plaintiffs to Google.

---

[66] *See, e.g.*, *Jacobs Chuck Manufacturing Co. v. Shandong Weida Machinery*, Civil Action No. 2:05-CV-185, slip order at 1 ("One World contends this interrogatory is permissible and serves to narrow the claim construction process. Plaintiffs contend that the interrogatory requires the disclosure of attorney client and work product protected information and, in any event, is premature under the docket control order. The court agrees with the plaintiffs that the interrogatory is premature and, for that reason, will deny the motion to compel.") (Exhibit E).

Dated: December 17, 2008

Respectfully submitted,

/s/ David B. Weaver
David B. Weaver (TX Bar No. 00798576)
Christopher V. Ryan (TX Bar No. 24037412)
Michael Valek (TX Bar No.24044028)
R. Floyd Walker (TX Bar No. 24044751)
Stephen C. Stout (TX Bar No. 24060672)
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Tel: (512) 542-8400
Fax: (512) 236-3338
E-mail: dweaver@velaw.com
    cryan@velaw.com
    mvalek@velaw.com
    fwalker@velaw.com
    sstout@velaw.com

William B. Dawson (Tx Bar No. 05603600)
VINSON & ELKINS L.L.P.
3700 Trammel Crow Center
3001 Ross Avenue
Dallas, Texas 75201-2975
Tel: (214) 220-7926
Fax: (214) 999-7926

Otis W Carroll, Jr. (TX Bar No. 03895700)
Collin Maloney (TX Bar No. 00794219)
IRELAND CARROLL & KELLEY
6101 S Broadway, Suite 500
Tyler, TX 75703
Tel: 903-561-1600
Fax: 903-581-1071
Email: Fedserv@icklaw.com

Franklin Jones, Jr. (TX Bar No. 00000055)
JONES & JONES, INC. P.C.
201 W Houston St., PO Drawer 1249
Marshall, TX 75671-1249
Tel: 903-938-4395
Fax: 903-938-3360
Email: maizieh@millerfirm.com

***Attorneys for Plaintiffs Northeastern University and Jarg Corporation***

# CERTIFICATE OF SERVICE

I hereby certify that on 17th December, 2008, I electronically filed the *Response to Google Inc.'s Motion to Compel* using the CM/ECF system, which electronically mailed notification of such filing to the following:

Allen Franklin Gardner
Michael Edwin Jones
Potter Minton PC
110 N College, Suite 500
PO Box 359
Tyler, TX 75710-0359
allengardner@potterminton.com
mikejones@potterminton.com

Ruffin B Cordell
Fish & Richardson PC
1425 K St, NW, Suite 1100
Washington, DC 20005
cordell@fr.com

Enrique D Duarte
Howard G Pollack
Jerry T. Yen
Shelley K Mack
Fish & Richardson
500 Arguello St., Suite 500
Redwood City, CA 94063
duarte@fr.com
pollack@fr.com
yen@fr.com
mack@fr.com

Francis J Albert
Jason W Wolff
Fish & Richardson
12390 El Camino Real
San Diego, CA 92130
fja@fr.com
wolff@fr.com

                                          /s/ David B. Weaver
                                          David B. Weaver